**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARLOS ABREU,

                         Plaintiff,

                                                       9:15-CV-1306
       v.                                              (TJM/DJS)

MR. MILLER, *et al.*,

                         Defendants.

**APPEARANCES:**                               **OF COUNSEL:**

CARLOS ABREU
Plaintiff, *Pro Se*
99-A-3027
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. BARBARA D. UNDERWOOD         RYAN L. ABEL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I.  INTRODUCTION

       This civil rights action was filed in November of 2015 by *pro se* plaintiff Carlos

Abreu.  *See* Dkt. No. 1, Compl.  Upon the District Court's initial review of the Complaint,

a number of Plaintiff's claims were dismissed. *See* Dkt. No. 28. The claims remaining following that initial review are Plaintiff's Eighth Amendment excessive force claims against Defendants Bascue, Eastman, Gontea, Lyon, and John Does 1-4; an Eighth Amendment sexual assault claim against John Doe No. 1; an Eighth Amendment failure to protect claim against Defendants Annucci, Bascue, John Doe Director of Inmate Movement and Control, Eastman, Melecio, Miller, and Venttozzi; Eighth Amendment medical indifference claims against Defendants Abozny, Bascue, Eastman, Gontea, Ives, Lyon, Miller, Watkins,[1] and John Does 1-4; and Eighth Amendment conditions of confinement claims against Defendants Bascue, Eastman, and Miller. *Id.* In its Decision and Order, the District Court offered Plaintiff the opportunity to file an amended complaint to replead any of the causes of action the court had dismissed without prejudice; Plaintiff filed an Amended Complaint, which is identical to the Complaint, except that it is typed instead of handwritten, and identifies the Defendant Director of Inmate Movement and Control in the caption. Dkt. No. 31; Dkt. No. 33, Am. Compl.

Presently before the Court is Defendants' Motion for Summary Judgment, which is based upon Plaintiff's alleged failure to exhaust his administrative remedies prior to filing this action. Dkt. No. 53. Plaintiff has filed an opposition, as well as a Motion for Sanctions. Dkt. No. 64, Pl.'s Motion for Sanctions; Dkt. No. 64-1, Pl.'s Decl.; & Dkt. No. 64-2, Pl.'s Opp. Defendants have filed a reply. Dkt. No. 67, Defs.' Reply. Plaintiff also filed a reply

---

[1] Defendant Watkins is identified on the docket and in Plaintiff's filings as Defendant Watking and Walken; the Court will refer to her as Defendant Watkins, as she is identified in Defendants' filings.

regarding his Motion for Sanctions.  Dkt. No. 68.  At Plaintiff's request, the Court provided Plaintiff additional time to submit any further opposition, but he failed to do so; he instead filed a Motion for Injunctive Relief, which has been addressed in a separate order.  *See* Dkt. Nos. 72 & 81.

### A.  Plaintiff's Failure to File a Statement of Material Facts

In his opposition, Plaintiff failed to provide a statement of material facts.  Pursuant to this District's Local Rules, "the Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  N.D.N.Y. L.R. 7.1(a)(3).  Although *pro se* litigants are entitled to a liberal construction of their filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), their *pro se* status does not relieve them of their obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995).

However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a Rule 7.1 statement of material facts.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts).  Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts.  The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Facts only when properly

supported by the record.  Dkt. No. 53-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).  In addition, keeping in mind Plaintiff's *pro se* status, the Court will refer to his verified Complaint and sworn submissions when practicable.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### B.  Summary of the Relevant Facts[2]

In his Amended Complaint, Plaintiff alleges that on October 15, 2015, he was transferred to Great Meadow from Sullivan Correctional Facility under an order for hand video cameras for his safety.[3]  Am. Compl. at ¶ 25.  He alleges that upon arrival to Great Meadow, he was placed in a Special Housing Unit (SHU) cell that was dirty with sugar and insects, and had dirty and ripped bed sheets.  *Id.* at ¶¶ 27 & 75-76.  There were also plexiglass cell shields on his cell door and bars, for no apparent reason.  *Id.* at ¶ 28.  In addition, his food was brought to him mixed together in a "nasty way" that appeared to have been done intentionally.  *Id.* at ¶ 29.  Plaintiff wrote to Defendant Miller, advising that he

---

[2] For purposes of providing context, because Defendants' submissions almost exclusively discuss exhaustion, the Court will rely on the facts alleged in the Amended Complaint.

[3] Presumably, such an order would require that Plaintiff be monitored by handheld video cameras in certain circumstances.

was not supposed to be in Great Meadow because he was transferred out of the facility after he was physically assaulted by staff there in 2007 and 2009, and further that he needed to be kept "under hand video cameras" at Great Meadow because he was in imminent danger. *Id.* at ¶¶ 31-32. When Plaintiff spoke with Defendant Ives, a Mental Health Unit ("MHU") Clinician, Defendant Ives relayed that everyone at Great Meadow remembered Plaintiff, and that Plaintiff was not supposed to be there and should be transferred out for his safety. *Id.* at ¶¶ 35-38. Plaintiff alleges that he then received a memo from Defendant Melecio stating that his placement at Great Meadow was appropriate and that Plaintiff would remain there. *Id.* at ¶ 41. Defendant Bascue informed Plaintiff that his hand video camera orders were discontinued by Defendants Miller and Eastman. *Id.* at ¶ 39.

Plaintiff showed Defendants Eastman and Miller his dirty cell, and requested cleaning supplies, but they, as well as Defendant Bascue, refused to provide him with cleaning materials. *Id.* He requested his prescription medications and eyeglasses via sick call slips. *Id.* at ¶ 30. Medical staff denied him sick call for days, and refused him his prescribed medications. *Id.* at ¶ 40. On October 28, 2015, Defendants Bascue and Lyon told Plaintiff that he needed to go to the MHU observation cell for his security, and that if he refused, they would use force to bring him there, even though Plaintiff had not expressed any reason for them to believe he needed to go to MHU for observation. *Id.* at ¶¶ 41-43. Plaintiff asked for hand video cameras because he believed the reason they were forcing him to go to the MHU observation cell was to beat him up because there are no video cameras there; Plaintiff was denied the hand video cameras. *Id.* at ¶ 43.

Plaintiff voluntarily went to MHU, and explained to the nurse that he did not know why he was brought there. *Id.* at ¶ 47. When the nurse left the room, Defendants Bascue, Lyon, Gontea, and John Does 1-4 were there, and Defendant Bascue threatened to kill Plaintiff, and then hit Plaintiff's head into the wall. *Id.* at ¶ 48. That group of Defendants then escorted Plaintiff to the MHU observation cells area, ordered Plaintiff to face the wall, closed the door, and Defendants Gontea and John Does 1-4 punched Plaintiff all over his body, hit his face into the wall, threw him onto the floor, and kicked him for approximately five to ten minutes. *Id.* at ¶ 49. They then ordered Plaintiff to remove his clothes, and Defendants Gontea and John Does 1-4 held Plaintiff against the wall while Defendant Bascue and John Doe No. 1 sexually assaulted Plaintiff, while the other Defendants present smiled and laughed. *Id.* at ¶¶ 49-51. Plaintiff was in pain, and after the physical and sexual assaults was not provided any medical care. *Id.* at ¶ 52. Plaintiff repeatedly asked for medical attention, but was denied any such care. *Id.* at ¶¶ 53, 54, 55, 57, 60, 61, & 62. Plaintiff alleges that he continued to file sick call slips, and informed Nurse Watkins of the assaults and his resulting injuries, and she refused to provide him care. *Id.* at ¶¶ 77-78. Plaintiff has still not received medical attention, or his medications. *Id.* at ¶ 68.

Plaintiff reported the assaults to Defendants Miller and Eastman on October 29, 2015, who ignored him. *Id.* at ¶ 56. Plaintiff spoke with Unit Chief Mr. Jackson, showed him all of the injuries and reported the assaults, and Mr. Jackson informed Plaintiff that he was already aware, and had sent memos to everyone and reported this to medical, Defendants Miller and Eastman, DOCCS Albany, Captain Office, and Watch Command. *Id.* at ¶ 59. On

October 30, 2015, the Office of the Inspector General interviewed Plaintiff, tried to convince Plaintiff not to report the assaults, and failed to provide him with any medical care. *Id.* at ¶ 63.

Prior to the assaults, Plaintiff wrote to Defendant Miller and the DOCCS Commissioner reporting threats he had received and asking for a hand held video camera, and wrote to Defendants Miller and Annucci stating that if anything happened to him at Great Meadow, they would be responsible. *Id.* at ¶¶ 64-65.  Plaintiff believes his assaults were authorized by Defendants Miller and Eastman, because Defendant Eastman was involved with Plaintiff being assaulted in 2007 and 2009. *Id.* at ¶ 67.  Plaintiff alleges that Defendant Annucci and the Director of Inmate Movement and Control knew that Plaintiff was not supposed to be placed in Great Meadow, from where Plaintiff had already been transferred out due to previous assaults. *Id.* at ¶ 73.

## II.  DISCUSSION

### A.  Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts

showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44

F.3d 169, 173 (2d Cir. 1995).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).  Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.  *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance

Program ("IGP").  First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y.C.R.R. § 701.5(b).  An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a).  An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence.  *Id.* at § 701.6(g).  The IGRC reviews and investigates the formal complaint and then issues a written determination.  *Id.* at § 701.5(b).  Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision.  *Id.* at § 701.5(c).  Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination.  *Id.* at § 701.5(d).  Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.  An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires the grievant receive a response from CORC in order to exhaust.  N.Y.C.R.R. § 701.8.  It is not sufficient for a plaintiff to exhaust his administrative remedies after a suit is commenced; rather, the plaintiff must fully exhaust prior to filing the complaint. *Ross v. Blake*, 136 S. Ct. 1850; *Neal v. Goord*, 267 F.3d at 122.

## C.  Allegations Involving Sexual Assault

As Plaintiff describes in his opposition, the exhaustion requirement for allegations of sexual assault is different than that for other types of complaints.  As revised on May 15,

2014, DOCCs Directive 4040 provides:

> The department has zero tolerance for sexual abuse and sexual harassment. Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52(a)), an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the [PLRA] exhaustion requirement (42 U.S.C. § 1997e(a)) before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported as set forth below.

*Henderson v. Annucci*, 2016 WL 3039687, at *3 (W.D.N.Y. Mar. 14, 2016); *see also* N.Y.C.R.R. § 701.3(i).  Plaintiff contends that his allegations fall under this category, and that he has satisfied this exhaustion requirement.  Pl.'s Opp. at pp. 6-9.

Defendants contend that this standard does not apply to Plaintiff's allegations, because Plaintiff's only surviving sexual assault claim is against John Doe No. 1, who has not yet been identified or served, and the Office of the Attorney General does not purport to represent him.  Defs.' Reply at p. 2.  In his Amended Complaint, Plaintiff alleges that Defendants Bascue, Lyon, Gontea, and John Does 1-4 ordered him to face a wall, closed the door, and Defendants Gontea and John Does 1-4 punched him all over his body, hit his face against the wall, threw him on the floor, and kicked him for five to ten minutes.  Am. Compl. at ¶¶ 48-49.  Plaintiff alleges that they then ordered him to remove all of his clothes, and then Defendants Lyon, Gontea, and John Does 2-4 held his arms and legs against the wall and smiled and laughed, while Defendants Bascue and John Doe No. 1 sexually assaulted Plaintiff.  *Id.* at ¶¶ 49-51.

The less onerous exhaustion requirements apply to "any allegation concerning an incident of sexual abuse or sexual harassment"; at this early stage in the litigation, it is not

clear that all of the above do not "concern[] an incident of sexual abuse or sexual harassment," including the physical assault.  The physical assault occurred immediately before the sexual assault, in the same location, and involved all of the same individuals, and those who did not directly sexually assault Plaintiff allegedly helped to facilitate it.  Thus, drawing inferences in favor of the non-movant, the Court recommends finding for purposes of this Motion that all of the assaults occurring on October 28, 2015 "concern[ed] an incident of sexual abuse or sexual harassment" and thus are subject to the exhaustion requirement outlined in Directive 4040.

> Complaints regarding sexual abuse or sexual harassment
>
> shall be deemed exhausted if official documentation confirms that:
>
> > (1) An inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of the Inspector General; or
> >
> > (2) A third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

N.Y.C.R.R. § 701.3(i); *see also Henderson v. Annucci*, 2016 WL 3039687, at *4.  Here, Plaintiff alleges that he reported the incident to facility staff.  Am. Compl. at ¶¶ 59-60 & 63-65.  In particular, Plaintiff asserts that he reported the assaults to Unit Chief Mr. Jackson when he was making rounds, who said that he sent memos to a number of staff members regarding the incident.  *Id.*  This may constitute official documentation confirming that he

reported the sexual assault.  In addition, Plaintiff alleges that he submitted sick call slips related to the incident, which could also serve as documentation confirming his allegations. *Id.*  He contends that he separately reported the assaults to a number of facility staff; these reports could have resulted in official documentation being created.  Pl.'s Opp. at pp. 4-5. Plaintiff also contends that he did file a grievance about the assaults, and was advised by Defendants Williams and Abozny that the grievance had been forwarded to Watch Command pursuant to N.Y.C.R.R. § 701.3(i)(2).  Pl.'s Opp. at p. 9.

Defendants do not address whether there is official documentation confirming that Plaintiff reported these assaults.  "Exhaustion is an affirmative defense that must be raised by defendants, it is the defendants' burden to show that plaintiff has failed to exhaust." *Jackson v. Provost*, 2008 WL 2405715, at *9 (N.D.N.Y. June 11, 2008).  As such, the Court recommends finding that Defendants have not demonstrated that Plaintiff failed to exhaust his Eighth Amendment excessive force or sexual assault claims, and denying Defendants' Motion as to those claims.

### D.  Other Allegations

#### 1.  Failure to Protect

Plaintiff did not file any grievances regarding failure to protect.  Dkt. No. 53-5, Declaration of Jeffery Hale ("Hale Decl."), ¶ 63.  Plaintiff does not dispute this.  *See* Pl.'s Opp.

Plaintiff alleges that Defendants knew that Plaintiff had been assaulted at Great Meadow in the past, and that Defendant Eastman had authorized assaults on Plaintiff in the

past.  Am. Compl. at ¶¶ 65-67.  These conclusory allegations appear to deal solely with physical assault, and are not readily read to support an allegation that these Defendants failed to protect Plaintiff from an incident of sexual abuse or sexual harassment.  *See also id.* at ¶¶ 31 & 64 (letters to Defendants Miller and Annucci only complained of physical threats and past physical assaults).  As such, the Court recommends finding that Plaintiff failed to exhaust these claims, and that they be dismissed.

## 2. *Conditions of Confinement*

Plaintiff filed five grievances regarding his conditions of confinement.  GM 60171-15 "Cleaning Supplies," was filed on October 20, 2015.  Hale Decl. at ¶ 19; Dkt. No. 53-6, Hale Decl. Exs., Ex. C.  Plaintiff received the IGRC recommendation on November 2, 2015, and the Superintendent's decision on November 20, 2015.  Hale Decl. at ¶¶ 21 & 23; Hale Decl. Exs., Ex. C.  Plaintiff appealed to CORC on December 9, 2015, weeks after he had filed his Complaint.  Hale Decl. at ¶ 24; Hale Decl. Exs., Ex. C.  CORC provided their decision regarding the grievance on April 27, 2016.  Hale Decl. at ¶ 26; Hale Decl. Exs., Ex. C; Compl.  Plaintiff therefore did not exhaust this grievance before filing the Complaint, as the PLRA requires.

GM 60173-15 "Dirty Cell" was filed on October 20, 2015.  Hale Decl. at ¶ 27; Hale Decl. Exs., Ex. D.  The IGRC recommendation was issued on November 5, 2015, and because Plaintiff did not appeal the recommendation within the time period required by DOCCS Directive 4040, it was denied.  Hale Decl. at ¶¶ 30-31; Hale Decl. Exs., Ex. D.

GM-60215-15 "Dirty Port" was filed on October 29, 2015.  Hale Decl. at ¶ 40; Hale

Decl. Exs., Ex. F.  Plaintiff received the IGRC recommendation on November 5, 2017, and failed to appeal it within the time required by DOCCS Directive 4040; his appeal was therefore denied.  Hale Decl. at ¶ 42; Hale Decl. Exs., Ex. F.

GM-60283-15 "Cell Shield" was filed on November 13, 2015.  Hale Decl. at ¶ 45; Hale Decl. Exs., Ex. G.  As such, it was filed after Plaintiff filed his Complaint, and was not fully exhausted before the filing of the Complaint.  GM-60457-15 "Wants New Sheets" was filed on December 21, 2015, after Plaintiff filed his Complaint, and was therefore not fully exhausted before Plaintiff filed his Complaint.  Hale Decl. at ¶ 51; Hale Decl. Exs., Ex. H.

Plaintiff contends that he appealed all of his grievances to CORC, and that he fully exhausted all of his grievances.  *See* Pl.'s Opp. at p. 10.  However, even if he had fully appealed all of his grievances to CORC, Plaintiff's earliest grievances were filed on October 20; Plaintiff filed his Complaint on November 4.  As such, Plaintiff would not have had sufficient time to complete all three levels of appeal prior to filing the Complaint.  *See Bello v. Long*, 2016 WL 1690695, at *2 (S.D.N.Y. April 25, 2016) ("Plaintiff filed this action . . . fourteen days after the day the alleged events occurred.  In light of the multistep grievance procedure and the facts alleged in the amended complaint, it is not plausible that plaintiff exhausted his administrative remedies within fourteen days"); *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 581-82 (S.D.N.Y. 2015) (similar).  Thus, even if Plaintiff did continue with the appeals process for all of his grievances, he could not have completed the remaining levels of appeal because the reviewing bodies would not have been afforded sufficient time to respond to his appeals before he filed the Complaint.  *Thompson v. Bellevue Hosp.*, 2011 WL

4369132, at *13 (N.D.N.Y. Aug. 29, 2011), *report and recommendation adopted as modified sub nom. Thompson v. Dep't of Corr. NYC*, 2011 WL 4369125 (N.D.N.Y. Sept. 19, 2011). Therefore, he failed to exhaust his grievances regarding conditions of confinement before filing his Complaint, under either N.Y.C.R.R. §§ 701.5 or 701.8. *See Neal v. Goord*, 267 F.3d 116 at 122. Unless this failure can be excused, such claims must be dismissed.

### 3. Medical Indifference

Plaintiff filed three grievances regarding his medical claims in this case. Hale Decl. at ¶ 13. GM-60479-16 "Wants Meds/Treatment" was filed on January 5, 2016; as such, it was filed approximately two months *after* Plaintiff filed his Complaint. *Id.* at ¶ 55; Hale Decl. Exs., Ex. I. Plaintiff filed GM-60214-15 "Denied Medications" on October 28, 2015. Hale Decl. at ¶ 32; Hale Decl. Exs., Ex. E. IGRC provided its recommendation on November 12, 2015, after Plaintiff had filed the Complaint. Hale Decl. at ¶ 34; Hale Decl. Exs., Ex. E. Plaintiff, therefore, did not exhaust this grievance before commencing this action. GM-60169-15 "Denied Meds" was filed on October 20, 2015. Hale Decl. at ¶ 14; Hale Decl. Exs., Ex. B. *Id.* Plaintiff received the IGRC recommendation on November 5, 2015, after Plaintiff had filed the Complaint, and Plaintiff appealed the recommendation untimely, resulting in the denial of his appeal. Hale Decl. at ¶¶ 16-18; Hale Decl. Exs., Ex. B.

As with Plaintiff's conditions of confinement claims, Plaintiff could not plausibly have exhausted his administrative remedies even if he had appealed these grievances through each level of appeal, before the time he filed his Complaint. *See Bello v. Long*, 2016 WL

1690695, at *2; *Lopez v. Cipolini*, 136 F. Supp.3d at 581-82.  Plaintiff therefore failed to exhaust his grievances related to medical indifference before filing his Complaint, under either N.Y.C.R.R. §§ 701.5 or 701.8.  Unless excused due to unavailability, this failure to exhaust requires that these claims be dismissed.  *See Neal v. Goord*, 267 F.3d at 122; *Ross v. Blake*, 136 S. Ct. 1850.

### 4. Whether Plaintiff's Failure to Exhaust his Grievances Regarding his Conditions of Confinement and Medical Indifference Claims May be Excused

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate.  *Ross v. Blake*, 136 S. Ct. at 1858.  As the Supreme Court recently stated, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*   The Court provided three potential circumstances in which administrative remedies may be unavailable:  (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859-60.

Initially, Plaintiff has expressed significant familiarity with the DOCCS grievance process, and does not meaningfully contend that the process is unclear.  Pl.'s Opp, *generally*. Rather, Plaintiff contends that administrative remedies may not have been available to him because corrections officers are known to throw out grievances at Great Meadow.  Pl.'s Opp.

at pp. 6-8.  However, Plaintiff was able to file the grievances discussed above.  To the extent that Plaintiff may contend that the corrections officers caused a delay in filing a grievance or appeal, this would not excuse Plaintiff's failure to exhaust, as it remains implausible that Plaintiff could have exhausted any of his grievances before he filed his Complaint.  Indeed, the earliest that the events giving rise to Plaintiff's grievances could have occurred was October 15, when he was transferred to Great Meadow.  *See* Am. Compl. at ¶ 25. As such, there were only twenty days between the first date the basis for Plaintiff's grievances could have possibly arisen and the date Plaintiff filed his Complaint.  *See Bello v. Long*, 2016 WL 1690695, at *2; *Lopez v. Cipolini*, 136 F. Supp.3d at 581-82.

Even were that not the case, Plaintiff's contentions that the grievance process was unavailable to him are not specific enough to defeat summary judgment on this point. Plaintiff alleges that the SHU does not have mail lock boxes as required and that officers are known to throw away grievances and appeals.  Pl.'s Opp. at p. 6.  In these general allegations, Plaintiff fails to provide any facts regarding when he tried to file administrative grievances or appeals, how many times he attempted to file certain grievances or appeals, or whether he took any further action, such as appealing, after receiving denials of allegedly untimely filed appeals.  Pl.'s Opp. at pp. 6-9.  "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being

misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."); *Artis v. Dishaw*, 2016 WL 11266599, n.13 (N.D.N.Y. Sept. 12, 2016) (finding that plaintiff's failure to exhaust was not excusable, in part because, while the plaintiff "state[d] that some grievances were destroyed, he has not submitted any copies of these grievances, nor does he specify when he attempted to file them.").  Here, while Plaintiff contends he does not have access to his legal file, he could provide details as to the substance of his grievances, or the approximate dates when he had tried to file them.  Plaintiff's failure to exhaust his grievances is not excusable.

The Court recommends that Plaintiff's conditions of confinement and medical indifference claims be dismissed without prejudice due to his failure to exhaust his administrative remedies regarding these claims.  *See Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016), *aff'd*, 692 Fed. Appx. 668 (2d Cir. 2017) ("It is well established that receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks omitted) (citations omitted).

### III.  PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff has also moved for sanctions against Defendants pursuant to Rule 37 of the Federal Rules of Civil Procedure.  Pl.'s Motion for Sanctions.  Plaintiff contends that Defendants' Motion for Summary Judgment was made in bad faith, to delay the action, and

that Defendants knew that Plaintiff was not required to exhaust his grievances related to the sexual assault. *Id.* Plaintiff also contends that the Motion was premature because discovery has not yet begun in this case. *Id.*

Rule 37 provides for sanctions where a party fails to cooperate in discovery. *See* FED. R. CIV. P. 37. In this matter, discovery has not yet begun. As such, the Court cannot find that Defendants have failed to comply with their discovery obligations. In addition, the Court has not issued any orders with which Plaintiff contends that Defendants have failed to comply, that could possibly justify the imposition of sanctions under Rule 37.

Plaintiff contends that the Motion was made in bad faith, because it was premature and only made to delay the progression of the case. Rule 56(d) provides a mechanism whereby "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." If the Court were to find that Defendants' Motion was indeed premature because Plaintiff has not yet had the opportunity to conduct discovery, which could alter the outcome of the Motion, Rule 56 would permit the Court to either defer consideration of the Motion, deny the Motion, or allow time for discovery prior to deciding the Motion. *See Television News, Inc. v. Int'l Alliance of Theatrical Emps. & Moving Picture Mach. Operators of the U.S. & Canada & its Locals, 52, 644, 771 & H-63, Defendants*, 1976 WL 1481, at *3 (S.D.N.Y. Jan. 15, 1976) ("Although the motion was premature, that did not make it in bad faith."). Here, however, as discussed above, the lack

of discovery at this point does not alter the analysis on this Motion. Thus, Plaintiff's Motion for Sanctions is denied.

## IV. UNIDENTIFIED DEFENDANTS

Plaintiff has included John Does 1-4 and John Doe Director of Inmate Movement and Control as Defendants in the action. This action has proceeded for over two and a half years and these Defendants have not yet been identified. In the event that Plaintiff wishes to pursue claims against these Defendants, he must show that he has taken reasonable steps during discovery to ascertain their identities. Plaintiff may then file a motion to amend the Amended Complaint and seek leave of the Court to add such individuals, by name, as Defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely identified and served, this action will be dismissed as against them.

Plaintiff did identify the John Doe Director of Inmate Movement and Control in the Amended Complaint that he filed, Dkt. No. 33, as a Mr. Botsfold. As Plaintiff has now identified this Defendant, the Court will direct that Mr. Botsfold be added to the docket as a Defendant, and that the Marshals effect service upon him.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**; and it is further

**RECOMMENDED**, that Plaintiff's Eighth Amendment failure to protect, Eighth Amendment medical indifference, and Eighth Amendment conditions of confinement claims

be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's Eighth Amendment excessive force and sexual assault claims be permitted to proceed; and it is further

**RECOMMENDED**, that Defendants Annucci, Miller, Eastman, Melecio, Nabozny, Ives, Venettozzi, and Watkins, be **DISMISSED** from this action; and it is further

**ORDERED**, that Plaintiff's Motion for Sanctions (Dkt. No. 64) is **DENIED**; and it is further

**ORDERED**, that the Clerk is directed to add Mr. Botsfold as a Defendant; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a Summons and forward it, along with a copy of the Amended Complaint, to the United States Marshal for service upon Mr. Botsfold; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**(14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Dated:   August 16, 2018
         Albany, NY



Daniel J. Stewart
U.S. Magistrate Judge